# THE PEOPLE OF THE STATE OF NEW YORK, RESPONDENT, *v.* HIRAM B. EVEREST AND CHARLES M. EVEREST, APPELLANTS.

*Indictment for a conspiracy — when held to contain but one count — Code of Criminal Procedure, secs. 275, 276 — when unnecessary statements will be regarded as surplusage — the unlawful agreement is the gist of the offense — allegations as to the different means adopted by the conspirators to accomplish their object — when the people are not required to prove all the allegations in the indictment.*

The appellants and three other persons were indicted and charged with a conspiracy to destroy the business and property of the Buffalo Lubricating Oil Company (Limited), and to prevent it from carrying on its business of producing, manufacturing, refining and selling petroleum oil and its products; and to destroy the machinery, buildings, property and products of the said corporation; and to destroy the credit of the company, and to wrongfully and unlawfully entice from the employment of the said corporation its skilled workmen, and particularly one Miller; and to bribe and hire the said Miller to construct the works of the corporation so that they would not answer the purposes for which they were

intended and could not be successfully operated, but would blow up and explode and destroy the stills and other apparatus while in operation; and to hire him to operate its works so that crude petroleum, which it should undertake to convert into lubricating oil, should be converted into coke, tar and other articles of little value; and to hire Miller and other workmen to build unnecessarily hot fires in its furnaces and convert the oil in its stills into worthless inflammable and explosive gases which would explode and seriously impair the machinery and works of the company; and to institute and maintain suits at law and in equity which the defendants knew to be unfounded in merit, and to hire witnesses to falsely testify in such suits.

The indictment also set forth several overt acts done and committed by the defendants, in pursuance of their said agreement, which were of the same nature and character as those above set forth, as the means by which the object of the conspiracy was to be accomplished.

On their arraignment the defendants demurred to the indictment upon the grounds that more than one crime was charged in the indictment, within the meaning of sections 278 and 279 of the Code of Criminal Procedure, to wit: Conspiracy, arson, attempted arson and subornation of perjury; and also that the said crime was charged in the indictment to have been committed in a different manner and by different means, within the meaning of section 279 of the Code of Criminal Procedure, and for that reason the crimes should be charged in separate counts.

*Held*, that the indictment contained but one count.

That, discarding some of the words and paragraphs which might be treated as surplusage, it was, in form and arrangement of the facts stated, in full compliance with the general rules of criminal pleading as prescribed by the Code of Criminal Procedure (§§ 275, 276).

Before setting forth any acts of the defendants, which were relied upon by the prosecution as constituting the crimes charged, the indictment stated the nature and character of the business in which the defendants were interested, and the general aims and objects which they had in view in the management of their own business and the gains and profits they received therefrom, as well as those which they in the future hoped to realize, and also the nature and character of the business of the Buffalo Lubricating Company, where it was located, who were interested in the same as shareholders, for the purpose of disclosing the inducements and motives of the accused which moved them to make the unlawful combination charged upon them.

*Held*, that although these statements were unnecessary in framing the indictment, and might have been omitted, yet, as the court was unable to see that they in any way misled the defendants, they might be regarded as surplusage.

That it was, however, clearly competent for the people to prove upon the trial the facts thus alleged as bearing upon the question of the defendants' guilt.

That there was but one conspiracy charged and only one combination alleged, the other averments set forth in the indictment, preceding the statements, as to the overt acts done and committed by the defendants, being charged as the means agreed upon by the defendants by which to accomplish the purpose of the conspiracy.

That one leading principle in the law relating to conspiracies is that the unlawful agreement constitutes the gist of the offense, and when the nature and object of the combination is properly charged in the indictment, the other allegations should be limited to the statement of the means adopted by the accused to carry out the conspiracy, and the overt acts committed by them, to effect the purpose intended.

The counsel for the appellants contended that each statement in the indictment, as to the means agreed upon by the defendants to destroy the prosecutor's business and property, was a separate and distinct conspiracy.

*Held*, that, if this argument should prevail, it would subject the conspirators to as many separate indictments and trials as there were separate and distinct acts agreed upon by them to be done at the time of performing the conspiracy, as the means by which to accomplish the purpose intended.

That, as the agreement is the gist of the offense, there cannot be but one trial and conviction where there is but one agreement, although the conspirators may have agreed upon a variety of means by which to accomplish their purpose.

It was also contended by the appellant's counsel that, as the indictment charged an indivisible crime, consisting of many elements which were unified by the form of the allegations, the prosecution could not succeed without proving all the elements set out as constituting the crime.

*Held*, that this argument failed to recognize the legal principle already stated, that the gist of the offense consisted in the agreement which constituted but a single act.

That it is never necessary for the people to prove all the allegations in the indictment if those which are supported by the evidence constitutes the crime charged therein.

*Bork* v. *The People* (91 N. Y., 13); *People* v. *Davis* (56 id., 95); *O'Connell and others* v. *The Queen* (11 Cl. & Finn., 155) followed.

That it was unnecessary for the people to prove that the defendants, who were convicted, committed all the unlawful acts which they conspired to do, as if they did any one of them, their complete guilt was established.

APPEAL from a judgment of the Erie county Oyer and Terminer, entered in the office of the clerk of that county on May 8, 1888, imposing upon the defendants a fine of $250 on a verdict finding the defendants guilty of the crime of conspiracy.

The indictment, as presented by the grand jury, was against the appellants and three other persons, and charged them with a conspiracy to destroy the business and property of the Buffalo Lubricating Oil Company, limited, a domestic corporation, and to prevent it from carrying on its business of producing, manufacturing, refining and selling petroleum oil and its products; and to destroy the machinery, buildings, property and products of the said corporation; and to destroy the credit of the company, and to

wrongfully and unlawfully entice from the employment of the said corporation its skilled workmen, and particularly one Albert A. Miller, who was then in the employ of the said corporation; and to bribe and hire the said Albert A. Miller to construct the works of the said corporation so that they would not answer the purpose for which they were intended, and would be defective and could not be successfully operated; but would blow up and explode, and destroy the stills and other apparatus while in operation; and to hire the said Albert A. Miller, then in the employ of the said company, to so operate its works, so that the crude petroleum which it should undertake to refine and convert into lubricating oil should be converted into coke and tar, and other articles of little value, instead of lubricating and refined oils of great value; and to hire the said Albert A. Miller and other workmen of the said company, who might be in its employ, to build unnecessary hot fires in its furnaces and thereby convert the oil in its stills into worthless, inflammable and explosive gases which would explode and seriously impair the machinery and works of said company; and to institute and maintain suits at law and in equity which the defendants knew to be unfounded in merit; and to falsely represent and state to all purchasers of and dealers in refined and lubricating oils that the said company had no right to manufacture the same and put the same upon the market; and to hire witnesses to falsely testify as witnesses in such suits. These charges are more fully set out in the indictment so as to indicate the nature and character of the means agreed upon by the defendants by which they were to accomplish their general purpose as first set forth in the complaint. The indictment also set forth several overt acts done and committed by the defendants in pursuance of their said agreement, which were of the same nature and character as the above set forth, as the means by which the object of the conspiracy was to be accomplished.

All the defendants were arraigned and pleaded not guilty. The proof tended to show that a conspiracy was formed of the nature and character charged in the indictment, at Rochester, in this State, and, also, that the defendants convicted induced said Miller, while in the employ of the company, purposely to mismanage the stills used in the process of distillation, so as to injure the same and lessen their value, and to make the process of refining crude petroleum a

failure, resulting in a pecuniary loss to said company; and, also, induced the said Miller to leave the service of the said company. There was a failure of proof to show that the defendants conspired to do all and every one of the other things charged in the indictment as before mentioned, or to prove that they did all the other overt acts alleged in the indictment. On their arraignment the defendants demurred to the indictment, and, among the grounds stated, were the following : That more than one crime is charged in the indictment within the meaning of sections 278 and 279 of the Code of Criminal Procedure, to wit, conspiracy, arson, attempt at arson and subornation of perjury; and, also, that the said crime is charged in the indictment to have been committed in a different manner and by different means, within the meaning of section 279 of the Code of Criminal Procedure, and for that reason the crime should be charged in separate counts; and, also, that the facts stated in the indictment do not constitute a crime. The demurrer was overruled and all of the defendants pleaded not guilty.

*Theodore Bacon,* for the appellants.

*George T. Quinby,* district attorney, for the people.

BARKER, J. :

The indictment contains but one count. After a careful analysis of the same, we think it is not subject to the appellants' criticism that it charges more than one crime. Discarding some of the words and paragraphs, which may be treated as surplusage, it, is in form and arrangement of the facts stated, in full compliance with the general rules of criminal pleading, as prescribed by the Code of Criminal Procedure (§§ 275, 276). The indictment, in its first paragraph, charges the defendants with the crime of conspiracy. They were thus fully notified of the offense imputed to them and for which they were put upon trial. The value and importance to the accused of an exact statement in the indictment of the crime charged is manifest, and cannot be overestimated, as it relieves him of the necessity of making a critical examination of the indictment for the purpose of ascertaining the crime alleged against him and as to which he is called upon to make answer.

The form of an indictment, as set forth in section 276, which

was approved by the legislature and recommended to the public prosecutor as a proper form to be observed and followed in preparing an indictment, begins : That a statement be made in the first clause of the name of the crime intended to be charged. The intention and purpose of the pleader in making the averments of fact, as set forth in this indictment, and which follow the general accusation, were made for the manifest purpose of stating the act or acts which constitute the offense previously charged and upon which the people rely to secure a conviction. The form and method of framing an indictment, as prescribed by the statute, is worthy of commendation for its simplicity and ready comprehension by all persons who have a reasonable degree of intelligence, and should be adhered to by the pleader having charge of prosecution. Before setting forth any of the acts of the defendant which were relied upon by the prosecution as constituting the crime charged in the indictment, the indictment states the nature and character of the business in which the defendants were interested and the general aims and objects which they had in view in the management of their own business, and the gains and profits they receive therefrom, as well as those which they, in the future, hope to realize ; and it also states the nature and character of the business of the Buffalo Lubricating Oil Company, where it was located, who are interested in the same as shareholders, for the purpose of disclosing the inducements and motives of the accused which moved them to make the unlawful combination charged upon them. These statements were, doubtless, unnecessary in framing the indictment and might have been omitted, but we are unable to see that they, in any way, misled the defendants, and may be regarded as surplusage. It was, however, clearly competent and pertinent for the people to prove the facts, as alleged, as bearing on the question of the defendants' guilt.

There is but one conspiracy charged, only one combination is alleged. The other averments set forth in the indictment, preceding the statements as to the overt acts done and committed by the defendants, were charged as the means agreed upon by the defendants by which to accomplish the purpose of the conspiracy. If a conspiracy should be formed with one aim and object only, although the means agreed upon by the conspirators by which to accomplish the single purpose in view, were many and various in their character

and, if carried out, would naturally tend to produce the result intended by their use, it seems very clear that an indictment setting forth such facts in their proper order in one count would charge but one offense. The successful accomplishment of the alleged conspiracy, by resort to the means set forth in the indictment, could not injure the business, property or estate of any corporation or person, except the Buffalo Lubricating Oil Company and its shareholders. It does not constitute a conspirary under our statutes for persons to combine together to commit a trespass upon or to destroy another's property. That offense now consists, as defined by the statute, of a combination of two or more individuals to commit a crime, or to do some one of the other acts mentioned in section 168 of the Penal Code. (See, also, 2 R. S., m. p. 692.) One leading principle in the law relating to conspiracies is, that the unlawful agreement constitutes the gist of the offense; and when the nature and object of the combination is properly charged in the indictment, the other allegations should be limited to a statement of the means adopted by the accused to carry out the conspiracy and the overt acts committed by them to effect the purpose intended. Where an indictment for a conspiracy does not show that the object of the conspiracy comes within the statutory definition of the crime, it should contain averments showing that the accused intended to accomplish the end aimed at by criminal means. (*Lambert* v. *The People*, 9 Cow., 578 ; *Commonwealth* v. *Wallace*, 16 Gray, 222 ; *Daniel O'Connell and Others* v. *The Queen*, 11 Cl. & Finn., 155.)

The learned counsel, in support of his argument, contends that each statement in the indictment as to the means agreed upon by the defendants to destroy the prosecutor's business and property is a separate and distinct conspiracy. The fallacy of this argument is easily detected. If two or more persons shall conspire to destroy the separate property of A and B, by means which are criminal in themselves, and the destruction of A's property might be accomplished by the use of some one or more, but not all, of the means agreed upon without causing any injury to the property of B, an indictment charging the accused with conspiracy to destroy the property of both A and B might be demurrable on the ground that it charges more than one crime; but such is not this case. If the argument

should prevail, it would subject the conspirators to as many separate indictments and trials as there were separate and distinct acts agreed upon by them to be done at the time of forming the conspiracy, as the means by which to accomplish the purpose intended. The law does not expose the accused to any such consequences. As the agreement is the gist of the offense there cannot be but one trial and conviction where there is but one agreement, although the conspirators may have agreed upon a variety of means by which to accomplish their purpose. The indictment does not, by any fair construction, charge but one conspiracy, that is, it alleges only one agreement, and all the other allegations and averments relate to the means, the way and the manner the conspiracy should be carried out, and setting forth the overt acts done by them in their efforts to accomplish the purpose of the combination. If these views are correct, all the other questions presented by the appellant have a ready solution by the application of the general rule applicable to the trial of any indictment which charges but one offense.

It is contended by the learned counsel for the appellants that, as the indictment charges an indivisible crime consisting of many elements which are unified by the form of the allegations, the prosecution cannot succeed without proving all the elements set out as constituting a crime. This argument fails to recognize the legal principle which has been already stated, that the gist of the offense consists in the agreement which constitutes but a single act. The conspiracy is complete when the combination is perfected. It is never necessary for the people to prove all the allegations in the indictment if those which are supported by the evidence constitute the crime charged therein. If the crime is set out with false circumstances, they may be rejected as not necessary to be proved. Mr. Phillips says it is a " universal principle, which runs through the whole of the criminal law, that it will be sufficient to prove so much of the indictment as charges the defendant with a substantive crime;" and illustrates the rule by saying "that in an indictment for murder the malice is but a circumstance in aggravation, and may be rejected and the accused be convicted of manslaughter. (1 Phillips' Ev. [7th London ed.], 202; *People* v. *White*, 22 Wend., 167; *People* v. *Jackson*, 3 Hill, 92.) The true rule is stated in *Bork* v. *The People* (91 N. Y., 13), viz.: "Where an offense may

be committed by doing any one of several things, the indictment may, in a single count, group them together and charge the defendant to have committed them all; and a conviction may be had on proof of the commission of any one of the things without proof of the commission of the others." (See, also, *People v. Davis*, 56 N. Y., 95.) The learned counsel for the appellants cites, in support of his contention, the opinion of Lord Chief Justice TINDALL in the case of O'Connell (*supra*), which was adopted by the house of lords, so far as he discussed the question now under consideration. After giving that case careful examination, I must be permitted to say that I think that the propositions of law affirmed in that case, so far as they are applicable, fully support the legal propositions already stated; and may be cited in support of the order overruling the demurrer and the rulings made on the trial of this indictment.

O'Connell and eight others were indicted for conspiracy and the indictment contained eleven counts. The legal questions discussed, so far as the same are pertinent to this case, arose upon the first count, and for brevity the case may be examined as if the indictment contained but one count and that the first. In that count it was charged that the accused did combine, conspire, confederate and agree with each other, * * * to create discontent and disaffection among the queen's subjects; and also to stir up jealousies, hatred and ill-will between different classes of her majesty's subjects * * * and to excite discontent and disaffection among her majesty's subjects serving in her majesty's army; * * * and to cause and to procure and aid and assist in causing and procuring divers subjects * * * unlawfully and seditiously to meet and assemble together at various times and at different places within Ireland, * * * and, further, to bring into hatred and disrepute the courts by law established in Ireland for the administration of justice and to diminish the confidence of her subjects in Ireland in the administration of the law therein, with the intent to induce her majesty's subjects to withdraw the adjudication of their differences with and claims upon each other from the cognizance of said courts, by law established, and to submit the same to the judgment and determination of other tribunals to be constituted for that purpose. The court then went on to state at full

length the various acts which were alleged as overt acts in support of the charge of conspiracy. One of the nine defendants died before the trial was moved; the others pleaded not guilty. By their verdict the jury found that all the defendants did conspire and agree to carry out a part of the unlawful schemes set out in the indictment, and charged therein, enumerating them; and as to the residue of the said indictment, they found Thomas Tierney not guilty. The jury also found the other seven of the conspirators were guilty of a part of the other charges set out in the indictment, and as to the remainder of the charges in the indictment, they found that four of these defendants were not guilty, and that three of the defendants were guilty of a part only of the remainder of the said charges. The house of lords summoned the judges to hear the arguments and to give their advice upon several legal propositions which were formulated by the lord chancellor. Lord Chief Justice TINDALL and eight others attended. The legal questions submitted were in the form of questions; and among them was the following: Is there any, and if any, what defect in the findings of the jury upon the trial of said indictment; and if so, is there any sufficient ground for reversing the judgment, by reason of any defect in the indictment or of the findings of the jury upon said indictment? Lord TINDALL, in discussing this question, stated that all the judges agreed in the opinion that the findings of the jury upon the first count of the indictment were not supportable in law, upon the ground that the jury not only found the eight defendants to be guilty of a joint conspiracy charged in said count, but also found a certain number of the eight defendants to have been guilty of separate and distinct conspiracies under that count. The reason and the ground for his opinion is stated as follows: "That as each count of the indictment charges one conspiracy or unlawful agreement, and no more than one, against all the defendants in such count, so the jury could find only one conspiracy or unlawful agreement on each separate count; for though it was competent to the jury to find one conspiracy on each count and to have included in that finding all or any number of the defendants, yet it was not competent for them to find some of the defendants guilty of a conspiracy to effect one or more of the objects stated, and others of the defendants guilty of a conspiracy to effect others of the objects stated; because that is,

in truth, finding several conspiracies on a count which charges only one. * * * The indictment contains but one charge; the jury cannot find but one."

On comparing the first count in that indictment with the one now here, it will be observed that they are substantially alike in their construction. The lord chief justice, in support of his argument that there was but one conspiracy charged in the first count of the indictment, stated that "the crime of conspiracy is complete if two or more than two should agree to do an illegal thing; that is, to effect some thing in itself unlawful, or to effect, by unlawful means, something which in itself may be indifferent or even lawful. * * * It has accordingly been always held to be the law that the gist of the offense of conspiracy is the bare engagement and association to break the law, whether any act be done in pursuance thereof by the conspiracy or not." These reasons fully vindicate the indictment before us against the charge of duplicity.

It was unnecessary for the people to prove that the defendants who were convicted committed all the unlawful acts which they conspired to do; if they did any one of them, their complete guilt was established. Under our statutes a conspiracy, that is, the entering into the confederation merely, is not an indictable offense, except when the agreement by its terms is to commit a felony upon the person of another, or to commit arson or burglary, unless some overt act besides such agreement is done to effect the object thereof. * * * (Sections 168, 171, Penal Code.)

The court was requested to charge the jury that a conspiracy merely to injure a private person by an act not criminal within itself does not come within the statute forbidding a conspiracy to injure trade and commerce; which was refused and an exception taken; that exception was argued on the motion for a new trial before the judge who presided at the Oyer and Terminer, and he held that, while the request was correct, as a legal proposition, that he had charged the jury to that effect before the request was made, and for that reason the exception was not available to secure a new trial. Upon the argument of this appeal the question presented by that exception has not been argued by the counsel for the appellant, and was well answered in the opinion of the learned trial judge which is printed with the case.

The conviction and the judgment entered thereon are affirmed.

All concur, except HAIGHT, J., taking no part.

Judgment and conviction affirmed and proceedings remitted to Erie Oyer and Terminer to proceed thereon.