THE PEOPLE OF THE STATE OF NEW YORK ex rel. JOHN P. HANNON, Appellant, *v.* THOMAS RYAN, as Sheriff of Erie County, Respondent.

Fourth Department, June 30, 1970.

*Harold J. Boreanaz* for appellant.

*Louis J. Lefkowitz, Attorney-General* (*N. Theodore Sommer* and *Ruth Kessler Toch* of counsel), for respondent.

GOLDMAN, P. J. On September 12, 1966 relator (defendant) was sentenced to a term of one year in the Erie County Penitentiary after being found guilty by a jury, at an Extraordinary Special and Trial Term of the Supreme Court, of the crime of conspiracy in violation of subdivisions 1, 4 and 6 of section 580 of the Penal Law. He filed a notice of appeal on the day of sentence, secured a certificate of reasonable doubt and was released on bail pending the determination of his appeal. The minutes of the trial were filed with the Erie County Clerk on November 14, 1966 and on November 19, 1966 the Special Assistant Attorney-General notified defendant's counsel of his intention to move to dismiss the appeal if steps were not taken by defendant to perfect it. Receiving no reply from defendant's counsel, a second letter was sent to him on January 3, 1967 urging that he proceed with the appeal and, after no response, the People moved on January 16, 1967 to dismiss the appeal. By order dated January 19, 1967, this court granted defendant's cross motion to enlarge the time for argument of the appeal to include the term commencing March 27, 1967 and further granted defendant's motion to be heard upon typewritten, rather than printed, papers. As a further concession, the court granted defendant's motion to argue, on appeal from the judgment of conviction, separately and preliminarily, the question of whether the substitution of an alternate juror after submission to the jury deprived defendant of a constitutional right requiring reversal of the conviction. Appellant did not argue this preliminary issue until October 19, 1967, notwithstanding our order that it be heard at the March Term.

Four members of the court which heard the appeal on the preliminary question sat in the argument of the instant appeal.

Finding no merit therein and no basis for reversal on this point, we reserved decision on the issue. We consider that the failure to raise this point on this appeal is tacit admission that appellant regards the issue as no longer available to him in habeas corpus. We thereafter directed submission of records and briefs, reproduced pursuant to CPLR 5529, setting forth the issues which the parties would present on appeal (29 A D 2d 826). We enlarged appellant's time to perfect his appeal to include the September 1968 Term, a period of approximately seven months, and notwithstanding our order that the appeal be brought " on for argument with all due diligence ", appellant continued his consistent pattern of delay and took no steps to comply with our direction. When appellant failed to perfect and argue his appeal at the September 1968 Term, the People, by letter of October 22, 1968, notified appellant's counsel that a motion would be made to dismiss the appeal, but again received no reply and appellant continued to ignore the court's directions and the People's efforts. On January 6, 1969, 4 months after the opening of our September Term, 11 months after our order directing the appeal on all of the issues, and 28 months after filing of the notice of appeal, the People again moved to dismiss the appeal. We granted the motion and wrote: " We conclude that for a period of more than two years defendant and his counsel have treated this appeal in a most casual manner. Scarcely a step has been taken by them except by direct order of this court and those orders have been indifferently obeyed or ignored ". (31 A D 2d 783, 784.) Our order of dismissal was affirmed by the Court of Appeals on April 23, 1969 (24 N Y 2d 902).

On May 13, 1969, appellant for the first time, commenced serving his sentence in the Erie County Penitentiary, but was released the next day by the issuance of a writ of habeas corpus by a resident Erie County Supreme Court Justice and was permitted to remain free by posting bail. After a full and extended hearing, his writ was dismissed and appellant was ordered " remanded back to the custody of the Erie County Sheriff and bail is hereby revoked ". Appellant immediately secured a certificate of reasonable doubt from another resident Erie County Supreme Court Justice and was continued on bail pending the determination of this appeal. Although the notice of appeal was filed September 25, 1969, it again required letters from the People and a conditional order of dismissal by this court to compel appellant to perfect his appeal, which was argued on May 21, 1970, some nine months after taking the appeal.

## Is Habeas Corpus an Available Remedy?

We have recited at some length the record of appellant's actions, which have so substantially delayed the day of judgment, in order to put into proper perspective appellant's contention that he should be permitted to use habeas corpus as a vehicle or substitute for appeal. Should his failure to argue his appeal, due entirely to his apparently deliberate dilatory tactics, give him that right? He bottoms this claim of exception to the traditional and orderly procedure of appeal on the authority of *People ex rel. Keitt* v. *McMann* (18 N Y 2d 257). No support can be found in *Keitt* to give appellant a right to appeal, which he seeks by habeas corpus, a right he has deliberately ignored and avoided when he had full opportunity to exercise it. The traditional role of habeas corpus is set forth in *Matter of Morhous* v. *New York Sup. Ct.* (293 N. Y. 131). That habeas corpus is not available as a substitute for the normal process of appeal has been declared in a multitude of decisions and clearly reaffirmed in *People ex rel. Kern* v. *Silberglitt* (4 N Y 2d 59, 62), where the court said: "It is no mere technicality to hold that this error, if such it was, may not be reached by habeas corpus. * * * Appeal was the method employed to raise this very question in *People* v. *Thompson* (251 N. Y. 428, *supra*); *People* v. *Bendix* (260 N. Y. 590, *supra*), and *People* v. *Tower* (308 N. Y. 123)." It is an accepted principle that "habeas corpus cannot take the place or perform the functions of an appeal from a judgment of conviction." (*People ex rel. Doyle* v. *Atwell,* 232 N. Y. 96, 102), and the writ "cannot be utilized as a substitute for a timely appeal" (*People ex rel. Banks* v. *La Vallee,* 18 A D 2d 738).

*People ex rel. Keitt* v. *McMann* (18 N Y 2d 257, *supra*) clearly states that it is not departing from procedural orderliness and conformity. The court was emphatic in this respect. It cautioned (p. 262): "Lest anyone be misled, we add this caveat. * * * While cases may arise where the right to invoke habeas corpus may take precedence over 'procedural orderliness and conformity' (*People* v. *Schildhaus,* 8 N Y 2d 33, 36), we are not holding that habeas corpus is either the only or the preferred means of vindicating fundamental constitutional or statutory rights * * *. Departure from traditional orderly proceedings, *such as appeal*, [emphasis supplied] should be permitted only when dictated, as here, by reason of practicality and necessity." Appellant concedes that his failure to avail himself of the more than ample opportunity to argue his appeal

" severely " restricts him to issues of constitutional dimension and of fundamental statutory right. *People ex rel. Keitt* v. *McMann* (*supra*) states that even these rights are not sufficient justification for the employment of habeas corpus, as a substitute for appeal, in the absence of " practicality and necessity ". One who neglects and willfully ignores regular, available remedies establishes no practical or necessary reason which should impel a court to depart from traditional appellate procedure.

Having decided that habeas corpus is not an available remedy and that the appellant's case does not satisfy the " practicality and necessity " test required by *People ex rel. Keitt* v. *McMann* (*supra*), we could stop here. Nevertheless, we think it appropriate to discuss briefly the merits of each of appellant's claimed errors.

### Denial of Equal Protection by Systematic Exclusion of Jurors

Appellant claims three grounds for excluding jurors which violated his constitutional rights. The first was the exclusion from the Grand Jury and trial jury panels of persons " who owned $250.00 or less in property value ". This ground was formerly found in subdivision 3 of section 662 of the Judiciary Law, since repealed (L. 1967, ch. 49, § 3). Appellant cites no authority to support his claim of unconstitutionality and none can be found. Our concern should be limited to fundamental restrictions of constitutional dimension which would be prejudicial to the rights of the defendant. " Irregularities in the summoning and impanelling of a grand jury will not automatically invalidate the indictments it returns, in the absence of some showing of prejudice or possibility of prejudice to the accused. " (*United States* v. *Wallace & Tiernan*, 349 F. 2d 222, 227.) When the method of impanelling a jury conforms to statute and there is no systematic exclusion of an identifiable group and results in a fair cross section of impartial persons, there is no deprivation of any constitutional right (see *People* v. *Prior*, 294 N. Y. 405). The Commissioner of Jurors testified that neither he, nor to his knowledge, his deputy had ever excluded any prospective juror by reason of the $250 qualification. The failure to enforce the requirement impels us to take the position asserted by Chief Judge FULD in *People* v. *Chestnut* (26 N Y 2d 481, 491), which considered the $250 exclusion as well as others, where he wrote: " In sum, the record, taken as a whole, establishes that the County Clerk and his

staff tried diligently to fulfill their statutory duty to select grand jurors who are 'intelligent; of sound mind and good character [and] well informed' (Judiciary Law, § 596, subd. 6 [renum. subd. 5 by L. 1967, ch. 49]). By choosing jurors on the basis of these factors, rather than race or ethnic background, their actions were clearly consistent with the policies embodied in the Equal Protection Clause. As the Supreme Court only recently reaffirmed (*Carter* v. *Jury Comm.*, 396 U. S. 320, 332), 'The States remain free to confine the selection [of jurors] to citizens, to persons meeting specified qualifications of age and educational attainment, and to those possessing good intelligence, sound judgment and fair character.' "

The claim of unfairness by reason of exclusion of persons who have scruples against the death penalty is also without merit. *Witherspoon* v. *Illinois* (391 U. S. 510), cited by appellant, does not apply where the sentence is not the death penalty. (Also, see, *Bumper* v. *North Carolina*, 391 U. S. 543, 545.) The Court of Appeals fully disposed of appellant's contention in its decision in *People* v. *Di Piazza* (24 N Y 2d 342, 353–354).

The third argument of appellant on systematic exclusion deals with individuals convicted of misdemeanors involving moral turpitude. This exclusion obviously has a reasonable basis, since it would be a strange system, indeed, which permitted those who had been convicted of antisocial and dissolute conduct to serve on its juries. " The basic principle which underlies the entire field of legal concepts pertaining to the validity of legislation is that by enactment of legislation a constitutional measure is presumed to be created " (8 N. Y. Jur., Constitutional Law, § 59). Also, see, *People* v. *Ferguson* (55 Misc 2d 711) for a good compilation of authorities.

## Due Process Violation by Police Interference with Jury System

Appellant claims that the prosecution's investigation of prospective jurors, both Grand Jury and trial jury, had a coercive effect upon the jurors in violation of his rights under the Sixth and Fourteenth Amendments. It is significant, in consideration of this issue, that appellant knew of this investigation when the trial jury was chosen, yet made no challenge to it. He, therefore, waived his opportunity to challenge, pursuant to the statutory scheme (*People* v. *O'Keefe*, 281 App. Div. 409, affd. 306 N. Y. 619; *People* v. *Cosmo*, 205 N. Y. 91, 101; 5 Wharton, Criminal Law and Procedure, § 2000 [1957]). There is no ground for an individual to challenge a grand

jury panel before indictment, although the court may do so for any of four enumerated reasons (Code Crim. Pro., § 231). Of the six grounds for challenge to a grand juror under section 232 of the code, only subdivision 6 could here be relevant, for it requires that the court on challenge, in its discretion, be satisfied that a juror can act impartially or without prejudice. A very similar system and plan of investigation of prospective jurors at an Extraordinary Term of Supreme Court was used by the prosecution in *People* v. *Bollettieri* (11 A D 2d 906, affd. 9 N Y 2d 629). The unanimous affirmance by the Court of Appeals is a complete rejection of appellant's claim of prejudice. It is of interest that six jurors who testified at the habeas corpus hearing said they were aware of the investigation, although in no instance was any prospective juror directly contacted by the investigators. Each of these jurors testified that this knowledge that he had been investigated in no way influenced his verdict.

### Adequacy of the Indictment

Appellant attacks the indictment on the ground that it did not properly advise him of what crime he was accused. This, he asserts, flows from the fact that the one count indictment charges him with violations of subdivisions 1, 4 and 6 of section 580 of the Penal Law — three separate crimes which, he claims, should have been charged in three separate counts. The demurrer to the indictment was denied by the Trial Justice. The propriety of this denial could have been properly raised on direct appeal, but, again, appellant by his protracted delays failed to avail himself of a direct appeal. Contrary to appellant's contention, the indictment, although specifying three subdivisions of section 580 of the Penal Law, does not charge three different crimes, but rather charges different means by which the ultimate crime, conspiracy, might have been committed. As argued by the People, sections 278 and 279 of the Code of Criminal Procedure have not been construed to require the method of separation of crimes into counts, as appellant urges. No authority is cited by appellant to support his position. The People properly contend that the indictment states but one crime, that of conspiracy, although more than one means was specified to effectuate its purpose. A similar fact situation existed in *People* v. *Everest* (51 Hun 19, 24–25), where the court said: "There is but one conspiracy charged, only one combination is alleged.   *   *   * If a conspiracy should be formed with one aim and object only,

although the means agreed upon by the conspirators by which to accomplish the single purpose in view, were many and various in their character and, if carried out, would naturally tend to produce the result intended by their use, it seems very clear that an indictment setting forth such facts in their proper order in one count would charge but one offense.''

As was stated in *People* v. *Tavormina* (257 N. Y. 84, 93): '' The crime of conspiracy does not consist of both the conspiracy and the acts done in carrying it out but of the conspiracy alone.'' The Supreme Court dealt with the same question of a single count in *Braverman* v. *United States* (317 U. S. 49, 54) with this statement: '' The allegation in a single count of a conspiracy to commit several crimes is not duplicitous, for ' The conspiracy is the crime, and that is one, however diverse its objects.' *Frohwerk* v. *United States*, 249 U. S. 204, 210 [citing cases]. * * * Since the single continuing agreement, which is the conspiracy here, thus embraces its criminal objects, it differs from successive acts which violate a single penal statute and from a single act which violates two statutes. [Citing cases.] The single agreement is the prohibited conspiracy, and however diverse its objects it violates but a single statute ''.

The single act of conspiracy charged in the instant case was to obtain $800,000 from the city for property which had been purchased a few minutes earlier for $650,000. An almost identical situation occurred in *People* v. *Engel* (200 Misc. 60, 62), where the indictment charged only one count of conspiracy, pursuant to the same section and the same three subdivisions of the Penal Law as in the case at bar, where the court held that '' This agreement constitutes but a single act and the commission of any one or more of the items prohibited, establishes but one crime of conspiracy ''. The indictment fully and without ambiguity acquainted and informed appellant of the charge and no substantial right was denied him. The principle to be followed was succinctly stated in *People* v. *Byron* (17 N Y 2d. 64, 67): '' The test is whether a reasonable man subject to the statute would be informed of the nature of the offense prohibited and what is required of him. Such warning must be unequivocal but this requirement does not preclude the use of ordinary terms to express ideas which find adequate interpretation in common usage and understanding.'' (See, also, *People* v. *Bergerson*, 17 N Y 2d 398.)

Appellant specifically attacks subdivision 6 of section 580, contending that it is vague, and, therefore, violative of due process of law. Although one might admit that it is not a model

of specificity, it is sufficient to give notice of the type of conduct it declares illegal. We hold this subdivision not violative of appellant's constitutional rights. We find the indictment sufficient.

### Due Process Violation Based Upon
### Totality of Circumstances

We find no merit to any of the claimed errors under this point. Most of the objections raised are not of constitutional dimension and cannot be said to affect the integrity of the fact-finding process. Clearly they are not the proper subject of inquiry by a writ of habeas corpus. The People have so fully answered each of appellant's arguments in the last 23 pages of their brief that there is no need for further comment on this point.

Before concluding, we feel constrained to comment on one rather disconcerting aspect of the postconviction proceedings below. This case was tried before an Extraordinary Term of Supreme Court, the existence of which was maintained and continued to handle postconviction matters. However, instead of submitting the habeas corpus petition to the Extraordinary Term, appellant applied for his writ to a Justice of the Supreme Court, Special Term. After the Justice signed the writ and released relator on bail, a second Justice determined that there should be a hearing and continued bail, a third Justice held the hearing, dismissed the writ, and remanded appellant to the custody of the Sheriff, and a fourth Justice granted the unusual relief of a certificate of reasonable doubt and bail pending the appeal from the denial of the writ of habeas corpus. While the jurisdiction of Extraordinary Term is not exclusive (see, Judiciary Law, § 149, subd. 2; *People* v. *Harris*, 182 Misc. 787, 793–794, revd. 268 App. Div. 731, revd. 294 N. Y. 424), it would have been far more orderly and efficient for this matter to have been referred to the Extraordinary Term or, failing that, to a single Justice of the Supreme Court, rather than to four Justices of co-ordinate jurisdiction. (See CPLR 2217; 2221; 5519, subd. [c]; *Parker* v. *Rogerson*, 33 A D 2d 284, 290–291.)

Therefore, the judgment, dismissing appellant's writ of habeas corpus and remanding appellant to the custody of the Erie County Sheriff, should be affirmed.

DEL VECCHIO, WITMER, BASTOW and HENRY, JJ., concur.

Judgment unanimously affirmed.