## Supreme Court—Appellate Division—Second Department.

November, 1899.

## PEOPLE v. THEODORE B. WILLIS.

1. CRIMINAL LAW—CONSPIRACY.

 The willful *neglect, omission* and active violation of his official duties by a public officer constitutes a crime under the laws of this state.

2. SAME.

 A public officer, or person holding a public trust or employment, upon whom any duty is enjoined by law, who willfully neglects to perform the duty, is guilty of a misdemeanor.

3. SAME.

 Under the laws of this state, if two or more persons conspire to commit a crime, each of them is guilty of a misdemeanor.

4. SAME.

 No agreement, however, except to commit a felony upon the person of another, or to commit arson or burglary, amounts to conspiracy in this state unless some act besides such agreement be done to effect the object thereof by one or more of the conspirators.

5. SAME.

In the case of a conspiracy to commit a crime, it matters not whether the crime contemplated is the main object or end sought to be attained by the conspirators, or only a means to that end. It is enough to constitute a conspiracy that the parties, whatever the incentive to the agreement may be or whatever part it may play in a larger scheme, have agreed together to commit the crime.

6. SAME.

An agreement between a public officer and a private person, which in terms provides that the public officer shall willfully neglect and violate any duty enjoined upon him by law, the neglect and violation of which shall appear to both parties to be effective to aid the private person in obtaining money, without specifying what that duty may be, is a criminal conspiracy under the laws of this state.

7. SAME—INDICTMENT.

Under an indictment for conspiracy the time is sufficiently specified as "in or about the month of February, 1896, but on what particular day the grand jury is unable to more particularly set forth."

8. SAME.

An allegation in the indictment for a conspiracy that the defendant, as commissioner of city works, entered into a conspiracy, is to be considered as charging that he did so while he was commissioner of city works.

APPEAL from judgment, sustaining a demurrer to the indictment.

Josiah T. Marean, District Attorney, for the People.

Benjamin F. Tracy and De Lancey Nicoll, for respondents.

WILLARD BARTLETT, J.—This is an appeal in behalf of the people from a judgment in the court below sustaining a demurrer to the indictment. The indictment charges the defendants with conspiracy, and sets out five overt acts as having been done to effect the object of the alleged conspiracy. The demurrer has been allowed on the ground that the indictment does not contain a plain and concise statement of the act constituting the crime, and that the facts stated in the said indictment do not constitute a crime. In order to pass intelligently upon the questions presented for review on this appeal, it is necessary to examine the indictment analytically, and ascertain precisely what the accusation is against the demurring defend-

ants. In this examination we may leave out of consideration the "divers other persons to the grand jury unknown" who are mentioned in the indictment, for it is enough if there is a good charge of conspiracy against the named defendants. An analysis of the indictment shows that it charges a conspiracy between the defendants, Phillips and Willis, wherein and whereby it was agreed that Willis, "in order to aid and support and render effective" demands of money to be made by Phillips from persons then or thereafter contracting, or desiring or offering or intending to contract, for the performance or furnishing to the city of Brooklyn labor or materials, in cases falling within the scope of the powers and duties of Willis as city works commissioner, he, said Willis, should and would "willfully neglect, omit, and actively violate his duty as such commissioner of city works as aforesaid, imposed by law, and permit his subordinates to omit, neglect, and violate their duties as such, in any particular in which such neglect, omission, or violation should to them, the said Theodore B. Willis and the said William E. Phillips, and such divers other persons, or any of them, appear to be effective to aid said William E. Phillips and such divers other persons in obtaining money from such persons or contractors as aforesaid." The pleader did not see fit to charge that the obtaining of the money from the contractors by Phillips as contemplated by the conspirators was in any respect unlawful, although it is difficult to perceive how it could be otherwise than illegal. In the view of the law, therefore, the conspiracy sought to be set out in this indictment is a conspiracy "to make use of means, themselves the subject of indictment, to effect an indifferent object." 2 Whart. Cr. Law (10th Ed.) § 1358. These means in the present case were the willful neglect, omission, and active violation of his official duties by the defendant Willis. They constitute a crime, under the laws of this state. "A public officer, or person holding a public trust or employment, upon whom any duty is enjoined by law, who willfully neglects to perform the duty, is guilty of a misdemeanor." Pen. Code, § 117. There is a similar enactment in section 154 of the Penal Code. Under the laws of this state, if two or more persons conspire to commit a crime, each of them is guilty of a

misdemeanor. Pen. Code. § 168. No agreement, however, except to commit a felony upon the person of another, or to commit arson or burglary, amounts to a conspiracy, in this state, unless some act, besides such agreement be done to effect the object thereof by one or more of the conspirators. Id. § 171. In the case of a conspiracy to commit a crime, it matters not whether the crime contemplated is the main object or end sought to be attained by the conspirators, or only a means to that end. It is enough to constitute a conspiracy that the parties, whatever the incentive to the agreement may be, or whatever part it may play in a larger scheme, have agreed together to commit a crime.

In the court below the indictment has been condemned as defective because the pleader has not set out what was the public duty of the defendant Willis in the premises, and has not pointed out the violation thereof which the parties had in contemplation. " What were the powers and duties of Willis, as commissioner of city works," asks the learned judge, " with respect to persons contracting to perform labor for, and to furnish materials to, the city ? " What was the character of the duties which the conspirators contemplated he should neglect, omit, and willfully violate, and in what manner were these neglects, omissions, and violations of duty to be perpetrated ? In what manner and to what extent would these neglects, omissions, and violations of duty aid or tend to aid the demand of money from persons contracting with the city ? Because the indictment does not answer these questions, it is declared not to contain the plain and concise statement of the act constituting the crime, within the requirements of section 275 of the Code of Criminal Procedure. It seems to us that this conclusion is based upon a misconception of the rules of criminal pleading, as applied to the crime of conspiracy. In the nature of things, the charge cannot be made any more definite than was the actual agreement of the conspirators. If the conspiracy was indefinite, the pleader cannot be called upon to state a definite conspiracy in order to make the indictment good Particulars cannot be pleaded which did not enter into the agreement. The real question is whether such agreement as is stated in the indictment, no matter how

indefinite it was, and no matter how general in its terms, constitutes a criminal conspiracy, under the statute. We do not see why it was necessary to set out in the indictment the duties which were imposed by law upon the defendant Willis as commissioner of the city works. The charter of the city of Brooklyn (Laws 1888, c. 583), which prescribed the duties of that officer, was a public statute, of which the courts of this state were bound to take judicial notice without formal allegation or proof. The alleged conspiracy was not an agreement to neglect or violate any particular one of those duties, but such of them as should thereafter seem to the conspirators to be effective in carrying out their object. If these were actually the terms of the compact, the conspiracy could not truthfully be charged otherwise than it is charged in the indictment; so that the discussion brings us down to the question upon which this branch of the case turns, and that is whether an agreement between a public officer and a private person, which in terms provides that the public officer shall willfully neglect and violate any duty enjoined upon him by law, the neglect and violation of which shall appear to both parties to be effective to aid the private person in obtaining money, without specifying what that duty may be, is a criminal conspiracy, under the laws of this state. If it is, we think such a conspiracy is sufficiently charged in this indictment. If it is not, of course the indictment falls. We cannot doubt that such a compact is a crime. To hold otherwise would be to adopt a rule which would free all conspirators from criminal liability, if they only took care to make their agreement sufficiently general in its terms. On this point the language used in a celebrated case by Chief Justice Willard, of South Carolina, furnishes a cogent argument:

"To illustrate the principle involved, suppose that a conspiracy had been formed to rob on the highways, but no person had been designated as the special subject of such robbery, and no definite place or means of overcoming the victims of the plot formed part of the agreement of conspiracy. Money and arms are collected to carry out the conspiracy. The band is divided, distributed and posted,—some for purposes of direct

attack, others to watch against surprise, and others to reinforce a weak party. No action has yet appeared to put in exercise the formidable combination of force and skill. At this stage of the operation the parties are arrested, and charged with a conspiracy to rob. Must the charge fail because the terms of the conspiracy did not embrace circumstances of time, place, and person, as it regarded the accomplishment of its purpose? * * * It would be a just reproach to the common law, if it afforded no means of dissipating combinations threatening the destruction of legal security, however formidable they might be, because the objects were general and threatened the community indefinitely, and were not aimed at some particular member of the community, or to some other limited and defined sphere." State v. Cardoza, 11 S. C. 195, 234.

There are few cases in the books dealing with conspiracies where the agreements of the conspirators are general in their terms, probably by reason of the fact that most conspiracies contemplate acts which are particularly specified when the criminal agreement is made. A leading case in Pennsylvania, however, in which the agreement was somewhat analogous to that under consideration here, is Com. v. Gillespie, 7 Serg. & R. 469. There the first count of the indictment alleged that both of the defendants did conspire to sell and expose to sale, and cause and procure to be sold and exposed to sale, a lottery ticket and tickets in a lottery not authorized by the laws of the commonwealth. This count was held to be good, because the conspiracy was to sell any prohibited lottery tickets that the defendants could sell,—not of any particular lottery, but of all.

It must be conceded that the view taken in the court below finds some sanction in the language used by Chief Justice Waite in U. S. v. Cruikshank, 92 U. S. 542, in which, among other things, we find this statement:

" In Maine it is an offense for two or more to conspire with the intent unlawfully and wickedly to commit any crime punishable with imprisonment in the state prison ; but we think it will hardly be claimed that an indictment would be good, under this statute, which charges the object of the conspiracy to have been ' unlawfully and wickedly to commit each, every, all, and

singular the crimes punishable by imprisonment in the state prison.' All crimes are not so punishable. Whether a particular crime be such a one or not, is a question of law. The accused has therefore the right to have a specification of the charge against him in this respect, in order that he may decide whether he should present his defense by motion to quash, demurrer, or plea ; and the court, that it may determine whether the facts will sustain the indictment."

In thus writing, however, we think it is evident that the learned chief justice did not have in mind an agreement, the actual terms of which should provide for the commission of all the crimes punishable in a certain manner. Can it be possible that under the law of Maine, or the law of this state, if two or more persons entered into a written compact of this character, their agreement would not constitute a conspiracy ? We think it would constitute a conspiracy, beyond any manner of doubt. The generality of the agreement would not destroy its criminal character.

None of the other decisions cited by the defendants upon this branch of the case have any bearing upon the real question, which is whether, assuming the conspiracy to have been as general in its terms as that alleged in this indictment, it is punishable under the law, or whether the charge must fail because it cannot be set out with more particularity than the facts will warrant.

Our conclusion is that the demurrer should not have been sustained upon either of the grounds for its allowance stated in the judgment under review. Several other objections to the indictment, however, are presented in the brief for the respondents, and these should also be considered in disposing of the appeal.

It is contended that the indictment is fatally defective in not stating the time when the defendants entered into the alleged conspiracy. That time is stated to have been " in or about the month of February, 1896, but on what particular day the grand jury is unable more particularly to set forth." We think that this averment is sufficiently specific. " The precise time at which the crime was committed need not be stated in the indictment ;

but it may be alleged to have been committed at any time before the finding thereof, except when the time is a material ingredient in the crime." Code Cr. Proc. § 280. In the case of People v. Emerson, 53 Hun, 437, 6 N. Y. Supp. 274, the question considered related, not to pleading the time when the alleged crime was committed, but to proof of the time; and it was held that it was competent to prove transactions on days other than the day named in the indictment. In People v. Olmsted, 74 Hun, 323, 26 N. Y. Supp. 818, the information alleged that the defendant committed the crime " on various occasions of 1890 and 1891." It was held by a majority of the general term in the third department, that this allegation as to time was defective. " Stating the offense to have been committed during the two years," said Mr. Justice Herrick, " is not fixing any time at all." This is very different, however, from the allegation here, which fixes the time within a month. In People v. Polhamus, 8 App. Div. 133, 40 N. Y. Supp. 491, the defendant was charged with having violated the excise law " between April 1, 1895, and July 5, 1895, inclusive, and particularly on July 3 and 4, 1895." It was held that the information was sufficiently definite as to the time "to enable the defendant to have the benefit of the judgment as a plea in bar to a future prosecution." We think the same conclusion must be reached as to the allegation of time in the present case. It is true that in Ledbetter v. U. S., 170 U. S. 606, 614, 18 Sup. Ct. 774, there is an intimation that an indictment might be regarded as insufficient on demurrer which alleged the offense to have been committed "on the —— day of April, A. D. 1896." Nevertheless the supreme court of the United States there held that this allegation as to time did not invalidate it on a motion in arrest of judgment; and it is to be noted that the statement of time in that case was capable of being regarded as no statement at all, on account of the omission to fill the blank.

A further objection which the respondents make to the indictment is that it fails properly to set forth any overt act. We have examined in detail the criticisms of their learned counsel upon the several averments of the indictment with respect to

the overt acts charged, and find no defect therein which can fairly be regarded as serious, much less fatal.

As to the contention that the indictment charges more than one crime, within the meaning of sections 278 and 279 of the Code of Criminal Procedure, we are satisfied with the opinion of the court below on that subject.

As to the suggestion that the indictment is fatally defective because it charges that the defendant Theodore B. Willis, as commissioner of city works, entered into the conspiracy, we think that the word " as " is to be regarded as used in the sense of the word " being," so that the charge, in substance, is that he entered into the conspiracy while he was commissioner of city works.

The judgment should be reversed, and a judgment entered disallowing the demurrer.

All concur.