Louis J. Capozzoli, J.
The defendant has filed demurrers to Indictment No. 3328, charging perjury in the first degree, and to Indictment No. 3326, charging conspiracy and taking unlawful fees, on the ground that it appears on the face of the indictments that matter constituting a legal bar to prosecution appears on the faces thereof. (Code Grim. Pro., § 323, subd. 5.) To support this contention, the defendant argues that since he was a public officer at the time of the Grand Jury investigation he was in effect compelled to execute a waiver of immunity against self incrimination in order to protect his position (N. Y. Const., art. I, § 6; New York City Charter, § 1123). He argues further that when he was required under the compulsion of the aforesaid laws to execute a waiver of immunity, his rights and privileges under the Fifth and Fourteenth Amendments of the United States Constitution were abridged by the New York law, and therefore an oath could not be legally administered to him, and the prosecution for perjury for the testimony given by defendant must fall. On the basis of this same argument he further contends that he cannot be prosecuted under Indictment No. 3326 because he was compelled to be a witness against himself.
It is well-established law that the State and municipalities have the power to provide conditions with which there must be acceptance if one is to be, or continue to be, a public officer. *86 (Garner v. Los Angeles Bd., 341 U. S. 716; Slochower v. Board of Educ., 350 U. S. 551; Canteline v. McClellan, 282 N. Y. 166.)
In the case of Garner v. Los Angeles Bd. (supra, p. 720) of the court’s opinion there is the following: “We think that a municipal employer is not disabled because it is an agency of the State from inquiring of its employees as to matters that may prove relevant to their fitness and suitability for the public service. Past conduct may well relate to present fitness; past loyalty may have a reasonable relationship to present and future trust. Both are commonly inquired into in determining fitness for both high and low positions in private industry and are not less relevant in public employment. ’ ’
In the case of Slochower v. Board of Educ. (supra, p. 559) of the court’s opinion there is the following: “ This is not to say that Slochower has a constitutional right to be an associate professor of German at Brooklyn College. The State has broad powers in the selection and discharge of its employees ”.
While it is true that the holding in Canteline v. McClellan (supra) to the effect that as to immunity from self incrimination the Constitution of the United States did not apply, has been overruled by the holding of Malloy v. Hogan (378 U. S. 1) in all other respects the decision still stands and is good law. At page 170 of the court’s opinion in Canteline v. McClellan (supra) the court said:
“ Suffice it to point out that we are dealing with a sovereign act of a sovereign people. The People of the State may write such provisions into their Constitution as they see fit, without let or hindrance, subject only to the applicable portions of the Constitution of the United States. * * *
“ The People, in their new Constitution, could have abolished any or every public office in the State or changed the tenure of any office. Public officers are the servants of the People and the latter may say upon what terms they shall be engaged or continue in office.after their engagement.”
Later in its opinion, at page 171, the court said: “ the People could provide in a constitution that no one should hold public office who had ever refused to sign a waiver of immunity. They have the power, by a constitution, to set conditions, with which there must be compliance, if one is to be or continue to be a public officer. Immunity may still be claimed, If claimed, one may not continue as a public officer.” Later on the same page, the court quoted from the opinion of the California court in Christal v. Police Comm. of City and County San Francisco (33 Cal. App. 2d 564, 568): “ We are not unmindful of the constitu *87 tional privilege above mentioned which may be exercised by all persons, including police officers, in any proceeding, civil or criminal. [Citing cases.] As we view the situation, when pertinent questions were propounded to appellants before the grand jury, the answers to which questions would tend to incriminate them, they were put to a choice which they voluntarily made. Duty required them to answer. Privilege permitted them to refuse to answer. They chose to exercise the privilege, but the exercise of such privilege was wholly inconsistent with their duty as police officers. They claim that they had a constitutional right to refuse to answer under the circumstances, but it is certain that they had no constitutional right to remain police officers in the face of their clear violation of the duty imposed upon them. (McAuliffe v. Mayor of New Bedford, 155 Mass. 216.)”
An examination of the opinion written by the court in Christal v. Police Comm. (supra, p. 569) discloses that The court said: 1 ‘ There is nothing startling in the conception that a public servant’s right to retain his office or employment should depend upon his willingness to forego his constitutional rights and privileges to the extent that the exercise of such rights and privileges may be inconsistent with the performance of the duties of his office or employment. ’ ’
In the case of United States v. Sheriff, City of N. Y. (330 F. 2d 100, 101) the court said: “Appellant argues two points, that Section 1123 is an unconstitutional limitation on the privilege against self-incrimination * * * The first ground is more troublesome, for restrictions on the constitutional privilege against self-incrimination are not favorably regarded. However, the Supreme Court has recognized that public bodies have the right to expect public employees to give frank replies to questions relevant to an employee’s fitness to hold public office.”
In Regan v. New York (349 U. S. 58) the court sustained the contempt conviction of a New York policeman who refused to testify before a Grand Jury investigating the acceptance of bribes from .gamblers. In order to retain his job with the city, Began executed a waiver of immunity from subsequent prosecution and appeared before the Grand Jury. However, he balked at telling whether he received any bribes. The Supreme Court (p. 62) held that since he had signed the waiver, Began “was not deprived of any constitutional rights in being punished for his refusal to testify.”
The defendant in the case at bar seems to argue that he signed the waiver of immunity only to save his position and therefore *88 the fact that he may have committed perjury in the course of the testimony which he gave to the Grand Jury is completely immaterial and cannot be made the basis of a prosecution. If this argument is sound, then Began, in the case of Regan v. New York (supra) would have been better off if he had testified before the Grand Jury and committed deliberate perjury. By so doing, if we adopt the view urged by the defendant in the case at bar, he would have saved his position and be free from any prosecution. That is completely illogical.
The act of the defendant in executing the waiver of immunity was a free and voluntary act. There was no compulsion whatever. He had a clear choice. He either could refuse to waive his rights or he could insist upon them. He chose to waive them, and having done so, he was a proper witness before the Grand Jury and could have been compelled to testify. (Regan v. New York, supra.) And when he did testify, of course, the authorities had the right to expect him to testify truthfully. And if he did not, he was properly subject to prosecution.
For the reasons above stated the demurrers are not allowed.