Domenick Gabrielli, J.
The defendant has interposed a demurrer to a two-count indictment on all the grounds mentioned in section 323 of the Code of Criminal Procedure and, additionally, “ that the Grand Jury, by which it [the indictment] was found, had no legal authority to inquire into the crime charged, by reason of its not being within the local jurisdiction of the County ’ This latter was withdrawn by counsel at the oral argument and hearing on the demurrer.
The indictment by its first count, charges this defendant (along with two others) with the crime of conspiracy. A second count charges one of the latter defendants with the crime of perjury.
In substance, the first count of the indictment accuses all three defendants of engagement in a conspiracy between October of 1962 and March of 1964, along with other persons not indicted, (1) to violate those provisions of the Penal Law which relate to bribery (§§ 372 and 1822), unlawful fees (§ 1826), willful neglect and omission of official duty (§§ 1841 and 1857) and (2) to prevent or obstruct due administration of the laws and to commit a fraud (§ 580, subds. 1, 4 and 6). The perversion or obstruction contemplated by the conspiratorial plan is alleged to have been intended to be accomplished through willful misrepresentation of and failure to disclose to the Common Council of the City of Buffalo certain facts (the truth of which was) known by the parties to the conspiracy. The essence of the conspiracy, was a plan to bring about the purchase of certain real estate by the City of Buffalo, at a price substantially higher than the owner’s actual asking price, while keeping other officials *181 and the citizenry of the city in ignorance of the true asking price and falsely representing that negotiation for reduction of the pretended asking price had been had with the owner’s representative, but without success. The aim of the plan was to realize and divide among the participants a profit from the city’s purchase of the property at the greater price.
The means alleged to have been agreed upon to attain that end were such that an option to purchase the property would be obtained from the owner, B. D. Brown, Inc. (an Indiana corporation, hereafter referred to, more briefly, as “Brown”), whose local representative was Wells and Barker, a real estate firm, of which William A. Wells was a member. Although not charged therein as a defendant, Wells is alleged by the indictment to have been one of the persons with whom defendants participated in the conspiracy. According to the further allegations of the indictment, the option was to be (and actually was) taken from Brown, in the name of Overland Bealty Inc. (hereafter referred to as “ Overland ”), of which, the same William A. Wells was president, and its terms would enable Overland to purchase the property from Brown for $650,000 payable, however, only if and when the city purchased the property for $800,000. And, (the indictment goes on to allege), various city officials would be promised and paid a share of the proceeds if the sale were consummated at that price, in return for their exercise of influence in gaining the desired result. The indictment also charges that it was further agreed that the defendant, Hannon (a real estate broker), would undertake to promote the sale for $800,000; that O’'Connell and Trammell would falsely make it appear that negotiations had been had for a reduction of the price, without success, and report their purported failure to the Common Council and that meanwhile, O’Connell would furnish Hannon and Wells with information concerning .the city’s financial position so as to guide Wells in obtaining — and continuing — the option taken by Overland from Brown. Although many overt acts are alleged .to have been committed by various collaborators in the furtherance of the plan, only those of most significant relevance need be mentioned.
The indictment alleges that in February of 1963 Overland, through Wells, its president, obtained from Brown an option to purchase the property on or before March 15, 1963, for $650,000; that Overland thereafter executed and delivered to Hannon an option enabling the city to purchase the plot on or before March 20, 1963, for $800,000; that after a preliminary conference between Hannon and Trammell, the former for *182 warded this option to the City Comptroller’s office and that thereafter, when so requested by Hannon or O’Connell, Overland obtained from Brown and in turn granted to the city successive extensions of the respective options; that in or about May of 1963, Hannon arranged a meeting between Wells and O’Connell, so as to assure Wells that the Comptroller’s office would approve acquisition of the property for $800,000 and that, in fact, a conference was had between them, at or about that time, concerning the proposed sale and the ways and means of obtaining its approval by the city; that on May 13, 1963, at Wells’ request, O’Connell wrote a letter to Wells, as president of Overland, informing him that the Comptroller had prepared and submitted to the Common Council a bond resolution and requesting Overland to extend the city’s option until August 1, 1963; that meanwhile, a bank loan had been obtained by one Frank J. Caffery (also named as a co-conspirator, but not indicted) and another, at Hannon’s request, and that the proceeds were turned over to Hannon for (( disbursement ” by him “ to various public officials, prior to obtaining the proceeds ” of the sale to the city; that thereafter Caffery and the coborrower obtained an additional loan of $5,000, part of the proceeds of which was given to Hannon with the intent and for the purpose of enabling the latter to pay some money to defendant Trammell; that in or about July of 1963, O’Connell met with and informed Hannon that city funds would not be available for acquisition of the property until September 3, 1963; that Hannon relayed that information to Wells whereupon the latter obtained from Brown a further extension of Overland’s option until September 15, 1963; that on or about September 3, 1963, O’Connell, knowingly and with intent to deceive the (members of the) Common Council, falsely stated to that body that he had personally contacted the owner’s agent, and relator (Hannon), and attempted to obtain a lesser price than $800,000 for the property and that again, on October 1, 1963, he gave a written statement to a member of the City Council — and released a copy for publication — to the effect that he had personally contacted the selling agent but was informed that $800,000 was a firm asking price, not subject to negotiation whereas, in fact, O’Connell had not contacted the selling agent nor had he been informed that the price was firm, and neither had he negotiated nor attempted to negotiate in good faith, for any lesser price; that on or about October 21,1963, Wells and O’Connell met in the Comptroller’s City Hall office in order to give Wells further assurance that the city would make the purchase for $800,000; that on that occasion *183 Wells demanded and, on October 25,1963, O’Connell gave Overland a written assurance that the city would exercise its option and purchase the site for $800,000; that on or about November 1,1963, Wells, on Overland’s behalf, informed Brown that Overland agreed to buy the parcel for $650,000; that about or shortly after mid-November of 1963, Hannon and Caffery executed agreements — secured by Hannon’s promissory notes — for division of the money to be received on consummation of the sale and that on or about December 12, 1963, following the sale, Hannon received and deposited a sum of $107,500 which was thereafter withdrawn and paid, in various amounts, to persons whose identity was unknow to the Grand Jury at the time when they found this indictment.
The contention of this defendant that the conspiracy count charges more than one crime is two-pronged. By one of his views of the indictment, it charges more than one crime insofar as it accuses him of engaging in the conspiracy, in violation of the provisions of several subdivisions of section 580 of the Penal Law. I hold to the contrary. Mr. Justice Valbkte in overruling an identical objection stated:
“we have a charge of conspiracy based upon subdivisions one, four and part of subdivision six of section 580 of the Penal Law * * *. The facts alleged in this count attribute but one crime to these defendants, viz., the crime of conspiracy. The gist of this crime is not in the doing of any of the things set forth in the subdivisions of section 580 * * * but in the agreement to do any of them. This agreement constitutes but a single act and the commission of any one or more of the items prohibited, establishes but one crime of conspiracy.
“ Where an offense may be committed by doing any one of several things, the' indictment may, in a single count, group-them together and charge the defendants with having committed them all, and a conviction may be had on proof of the commission of any one of the things without proof of the commission of the others. (People v. Davis, 56 N. Y. 95; Bork v. People, 91 N. Y. 5. See, also, People v. Everest, 51 Hun 19.) ” (People v. Engel, 200 Misc. 60,62.)
By the defendant’s other viewpoint, the conspiracy count charges more than one crime in that it accuses the defendants of having conspired to commit, and having committed, violations of the other substantive provisions of the Penal Law (set forth in the indictment) in their alleged furtherance of the unlawful plan. The same proposition was tendered to the court in People v. Willis (158. N. Y. 392) but repudiated without *184 pointed discussion.[1] In a recent statement of the principle involved it has been said that: “ While the overt act need not ‘ be of itself a criminal act ’ and need not ‘ constitute the very crime that is the object of the conspiracy ’ * * * nevertheless it may well be, and frequently is.” (People v. Glubo, 5 N Y 2d 461, 477). It is well settled that a conspiracy to commit a crime is an independent crime, distinct from the collateral crime or crimes contemplated, and complete in itself: “ It consists of a series of acts which constitute the misdemeanor, and under such circumstances the fact that the indictment alleges overt acts constituting the felony, or that the evidence upon a trial discloses that the conspiracy was executed by the commission of a felony, should not prevent a conviction for the crime of conspiracy.” The underlying policy consideration recognizes that the accused may, indeed, be guilty of the intermediate or ultimate crimes contemplated by the conspiracy but that “ the prosecuting officer might not be able at the trial to produce sufficient evidence of the defendant’s guilt * * * to lead to a conviction. The result might be that the defendant would escape all punishment, although clearly guilty of the crime of conspiracy.” (People v. Tavormina, 257 N. Y. 84, 92-93.) Accordingly, I hold that this indictment is to be taken as charging the conspiracy and not the implementary substantive crimes mentioned therein[2] and that it does' not, therefore, charge more *185 than one crime within the meaning of sections 278 and 279 of the Code of Criminal Procedure.
An additional claim made by the defendant is that the indictment does not state a crime against him in that the duties of his office as Director of Real Estate are not therein specified and the indictment is therefore void for it fails to outline what duties he has violated.
At the outset, it is well to point out that this objection, as is the case with any objection raised by demurrer, must appear upon the face of the indictment. (Code Crim. Pro., § 323; People v. Leibowitz, 12 Misc 2d 553; People v. Sguillante, 12 Misc 2d 514.)
As further amplified upon the hearing, the defendant’s objection, “ That the facts stated do not constitute a crime ” (Code Crim. Pro., § 323, subd. 4) is based on his view that the indictment is defective by reason of its failure to allege, in detail, the duties “ enjoined by law ” and which, under the conspiratorial plan, the defendant Trammell as Director of Real Estate, would “ willfully neglect ” (Penal Law, § 1841) and willfully omit to perform (id., § 1857). I hold to the contrary. As the court said in People v. Willis (158 N. Y. 392, 397): “ It was not necessary to state the particular law or particular statute which ’ ’ this city official ‘ agreed to violate ’ ’. The court will take judicial notice of all statutes and ordinances; and the court further held (p. 397) (as is the case here) that “ The nature and purpose of the conspiracy is stated in terms sufficiently clear and specific to enable the defendants to prepare for trial, and the judgment rendered upon it would be a bar to another trial upon the same charge ’ ’.
Our highest court has held that “ The theory of our government is, that all public stations are trusts, and that those clothed with them are to be animated in the discharge of their duties solely by considerations of right, justice and the public good.” (Trist v. Child, 88 U. S. 441, 450.) Quite apart from this, however, is the definite charge against this defendant that he engaged in a conspiracy to violate various sections and subdivisions of the Penal Law.
One of the charges in the indictment is that he engaged in a conspiracy to violate (in addition to other subdivisions of the Penal Law) subdivision 6 of section 580 of the Penal Law which provides that:
" If two or more persons conspire: * * * 6. To commit any act injurious to the public health, to public morals, or for *186 the perversion or obstruction of justice, or of the due administration of laws,
" Each of them is guilty of a misdemeanor. ’ ’
One can readily see, logically, (and legally) that if a person engages in a conspiratorial scheme to induce a public body (such as the Common Council of the City of Buffalo) to pass resolutions or ordinances to corruptly advance the financial interests of the defendant and his co-conspirators, without regard to the public interests, or for the ‘ ‘ obstruction of justice," or of the due administration of laws ”, he would certainly be guilty of violating this section (§ 580, subd. 6).
A close scrutiny of the indictment as it refers to this defendant, in his role as a member of the alleged conspiracy, in the overt acts therein described as well as the remainder thereof, reveals that the objection raised by him in specification No. 4 ” is not well founded and the demurrer, on this count, is disallowed. (See, also, People v. Bareika, 9 A D 2d 1002.)
Although there are other reasons for upholding the indictment as against this claim (under specification No. 4), it will not, because of this holding, be necessary to enumerate them.
The defendant further objects to the indictment and urges that it is defective because the alleged illegal acts charged against him are barred by the Statute of Limitations. An examination of the indictment, including the named overt acts, discloses that this position is not well-taken; and the court holds that the Statute of Limitations is not a bar and, in this particular respect, the demurrer is also disallowed.
The defendant executed a waiver of immunity and testified at some length before the Grand Jury which returned the indictment against him. It further appears that the defendant, in addition to being an attorney, was upon such occasion, represented by experienced counsel. Just prior to the execution of the waiver, the defendant had resigned as a city official and claims he was indirectly compelled to execute the waiver because of an action which had been commenced against him for a declaratory judgment to enjoin him from holding any public office for a period of five (5) years thereafter.
The New York State Constitution (art. I, § 6) provides as follows; nor shall he be compelled in any criminal case to be a witness against himself, providing, that any public officer who, upon being called before a grand jury to testify concerning the conduct of his present office or of any public office held by him within five years prior to such grand jury call to testify, for the performance of his official duties in any such present or prior offices, refuses to sign a waiver of immunity against sub *187 sequent criminal prosecution, or to answer any relevant questions concerning such matters before such grand jury, shall by virtue of such refusal, be disqualified from holding any other public office or public employment for a period of five years from the date of such refusal to sign a waiver of immunity against subsequent prosecution, or to answer any relevant question concerning such matters before such grand jury, and shall be removed from his present office by the appropriate authority or shall forfeit his present office at the suit of the Attorney-General. ’ ’
The defendant contends that the foregoing provisions of the New York State Constitution are unconstitutional as being violative of the Fifth and Fourteenth Amendments to the United States Constitution.
The Fifth Amendment to the United States Constitution provides that: “No person shall * * * be compelled in any criminal case to be a witness against himself ”.
The Fourteenth Amendment provides that: “No State shall * * * deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.”
There is grave doubt that this question of unconstitutionality can be raised by demurrer (People v. Lopes, 5 Misc 2d 1054) for the alleged unconstitutionality does not appear upon the face of the indictment. The grounds for any demurrer must be found in the provisions of section 323 of the Code of Criminal Procedure which states that “ The defendant may demur to the indictment, or any count thereof, when it appears upon the face thereof ” (emphasis supplied). There then follow the statutory grounds for any demurrer.
In spite of this, however, the court has chosen to rule upon this question and concludes that this objection must fail and the demurrer on the claim of unconstitutionality should be, and hereby is, disallowed for the reasons I shall set forth.
It has long been well established that the State has the power to impose conditions with which there must be acceptance if one is to be, or subsequently desires to be, a public officer. Public officers are servants of the People and the latter, by constitutional provisions, may prescribe upon what terms such public officers may be engaged or are to be re-engaged within a reasonable time after a voluntary resignation. (Garner v. Los Angeles Bd., 341 U. S. 716 ; Slochower v. Board of Educ., 350 U. S. 551; People v. Wheatman, 48 Misc 2d 85.) To hold otherwise would make for illogical conditions bordering on a mockery of legal and moral principles.
*188 In Regan v. New York (349 U. S. 58) the court sustained the contempt conviction of a New York City policeman who refused to testify before a Grand Jury investigating the acceptance of bribes from gamblers. In order to retain his job as a policeman, Began executed a waiver of immunity and appeared before the Grand Jury. However, he refused to state whether he received any bribes. The United States Supreme Court held (p. 62) that since he had signed the waiver, Began “ was not deprived of any constitutional rights in being punished for his refusal to testify.”
When the defendant executed the waiver of immunity, it was a free and voluntary act upon his part. He had a clear choice. There was no compulsion. His right to refuse to testify before the Grand Jury could have been preserved by his refusal to execute the waiver. He chose to waive this right and consequently became a proper witness before the Grand Jury; and he cannot now be heard to complain. The demurrer, upon this ground, is accordingly disallowed.
The defendant further claims that the joinder of the charge of perjury against the defendant O’Connell should be severed from the indictment on the ground that its presence is prejudicial to the rights of Trammell. I hold to the contrary.
After detailing the general charges and the overt acts against each of the defendants, the second count charges the defendant 0 ’Connell with perjury and there then follows the further charge that “ The acts and transactions alleged in the aforementioned counts of this.indictment are connected together with the acts and transactions alleged in all of the said counts of this indictment and, together, constitute parts of a common scheme and plan and crimes of the same or similar character on the part of George D. O’Connell and John P. Hannon and Wilbur P. Trammell.”
The case of People v. Vario (165 Misc. 842) actually disposes of the defendant’s present claim. There, the first count of the indictment charges the four defendants with the crime of conspiracy ; the second count charged only one of the defendants (Israel) with the crime of inducing another to commit perjury; the third count charged the two remaining defendants with the crime of subornation of perjury; the fourth count charged Vario alone with subornation of perjury; the fifth count charged two of .the defendants with violating section 2440 of the Penal Law; and the sixth count charged Vario with this same crime.
As in our case, the indictment in the Vario case alleged the existence of a common scheme or plan in almost identical language.
*189 The court there held that the demurrer filed by the defendant Israel, in which he claimed .that the second count of the indictment against him alone should not have been joined with the remaining four counts (charging others individually with other crimes), should be rejected and the demurrer was, as in the instant case, disallowed.
The court has carefully considered the various grounds urged by the defendant by his demurrer, at some length, because of the seriousness of the charges and the comparative novelty of some of the objections raised. After carefully considering each and every ground urged by the defendant by his written demurrer, oral argument and memorandum, it appears that the indictment complies with all the requirements of the existing provisions of law and does not infringe upon any of his constitutional rights.
It is the judgment of the court that the demurrer filed herein should be, and it is hereby, disallowed, and the Clerk of the court is directed to enter an order to that effect upon the minutes (Code Crim. Pro., § 326) upon the filing of this opinion. The defendant may enter a plea to the indictment at a continued term of this court appointed to be held at Part III in Erie County Hall, in the City of Buffalo at 10 o ’clock in the forenoon of the 16th day of February, 1966, or as soon thereafter as the matter may come on in due course (id. § 330).

. “The learned Appellate Division has shown quite elearly * * * that the indictment is not open to the objections made against it” (p. 398). The Second Department had said: “ As to the contention that the indictment charges more than one crime, within the meaning of sections 278 and 279 * * * we are satisfied with the opinion of the court below on that subject” (34 App. Div. 203, 210). In the opinion thus approved by the Appellate Division, the Special Term Judge, after noting that the overt acts alleged in the indictment “may and probably did involve the commission by the defendants of various crimes ” held that “ the indictment nevertheless is not obnoxious to that provision of the Code which requires that an indictment must charge but one crime and in one form. * * * The overt acts *' * are pleaded not as crimes charged in the indictment but as steps taken by the defendants in consummation of the conspiracy. Assuming that such steps constitute crimes, the fact remains that they are not presented as substantive and additional offenses. Mo case cited by the counsel for the defendants on this point even suggests, much less decides, that an indictment for conspiracy is bad for duplicity, because the overt acts pleaded are criminal in their nature.” (People v. Willis, 24 Misc. 537, 539.)

. See, also, People v. Miles (123 App. Div. 862, 875, affd. 192 N. Y. 541): “the crime charged is a conspiracy, not the presentation of the false claim”. In the former jeopardy context referred to in the Willis opinion (158 N. Y. 392, 397, supra) the conspiracy is held to be so distinctly separate from the offense involved as a criminal end, that prosecution for and conviction of the terminal crime is not barred by acquittal of the conspiracy (People ex rel. Part v. Truesdell, 260 App. Div. 884).